961 F.2d 1578
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kent Arland MCNEIL, Plaintiff-Appellant/Cross-Appellee,
v.
John Francis SALAN, Chief Prosecutor for Emmet County; Earl
Thomas Croton; James N. Erhart; Richard Zink; John
Charles Robbins, Staff Writer for Petoskey News-Review;
Richard M. Pajtas; Harvey C. Varnum; Emmet County
Prosecutor's Office, Emmet County Sheriff's Department,
Petoskey News-Review, Defendants-Appellees,
Emmet County Prosecutor's Office, Defendant-Appellee/Cross-Appellant.
 Nos. 91-2041, 91-2067.
 United States Court of Appeals, Sixth Circuit.
 May 14, 1992.
 
 Before KEITH and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Kent McNeil, a convicted felon serving a penitentiary sentence, appeals from the district court's grant of summary judgment in favor of defendants John Salan, plaintiff's prosecutor; Earl Croton, an investigating police officer; James Erhart, plaintiff's appointed counsel; John Robbins, a newspaper man; the Petoskey News-Review, Robbins' newspaper; Judges Richard Pajtas and Harvey Varnum; the Emmet County Sheriff's Department; and the Emmet County Prosecutor's office. Plaintiff, acting pro se, brought this action against defendants for violation of 18 U.S.C. § 1962 (Racketeer Influenced and Corrupt Organizations--RICO) and 42 U.S.C. §§ 1983, 1985 and 1986 (Civil Rights Acts). The principal issues on appeal are (1) whether the complaint properly alleges the existence of a RICO "enterprise," (2) whether plaintiff's civil rights claims are barred by the applicable statute of limitations, (3) whether plaintiff's pendent state claims were properly dismissed, and (4) whether this action was barred by a previous judgment against plaintiff in another case. For the reasons that follow, we affirm in part, reverse in part, and remand.
 
 I.
 
 2
 In July 1986, plaintiff was arrested and charged in the Michigan courts with kidnapping, extortion, armed robbery, and assault with intent to do great bodily harm. The charges resulted from the abduction and beating of Roger Skiba for the purpose of extorting money from him. In October 1986, plaintiff pled guilty to armed robbery and assault charges. He withdrew these pleas on March 20, 1987, but again pled guilty on January 11, 1988, this time to kidnapping and extortion charges. He was sentenced to thirteen to twenty years imprisonment on February 17, 1988.
 
 
 3
 On June 27, 1990, plaintiff filed the instant complaint alleging that the prosecutors, their investigators, the judges, his appointed defense counsel, and the Petoskey News-Review conspired to violate the provisions of 18 U.S.C. § 1962 by committing a pattern of racketeering involving mail and wire fraud. The complaint also charged defendants with violating plaintiff's civil rights and further alleged violations of state law involving extortion, procurement to commit perjury, and perjury.
 
 
 4
 Motions to dismiss and motions for summary judgment were filed by all the defendants in the case, and on July 27, 1991, the district court granted all motions for summary judgment and dismissal. This timely appeal followed.
 
 II.
 A.
 
 5
 Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. This court reviews the district court's grant of summary judgment de novo, viewing all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). Under Federal Rule of Civil Procedure 12(b)(6), a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. "Whether the district court correctly dismissed [the plaintiff's] claims pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law subject to de novo review." Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987).
 
 B.
 
 6
 The district court dismissed plaintiff's RICO claims because "plaintiff has not sufficiently demonstrated the existence of an 'enterprise.' All elements of a RICO claim must be pled sufficiently." J.A. 82 (emphasis added). The court went on to hold that "while plaintiff may be able to state a cause of action against defendants on various criminal or civil grounds, their actions as demonstrated in the pleadings do not constitute an enterprise pursuant to 18 U.S.C. § 1962." J.A. 83-84 (emphasis added). It therefore appears that the district court granted defendants' motions to dismiss on the ground that plaintiff failed in the pleading of an enterprise.
 
 
 7
 In support of its decision, the district court noted a line of cases which require that a RICO enterprise be shown to have a structure and existence apart from the mere commission of the predicate acts that constitute the alleged pattern of racketeering activity. E.g., United States v. Turkette, 452 U.S. 576, 585 (1981); United States v. Sanders, 928 F.2d 940, 944 (10th Cir.), cert. denied, 112 S.Ct. 142 (1991); United States v. Kragness, 830 F.2d 842, 855 (8th Cir.1987); United States v. Riccobene, 709 F.2d 214, 223-24 (3d Cir.), cert. denied, 464 U.S. 849 (1983); United States v. Bledsoe, 674 F.2d 647, 664 (8th Cir.), cert. denied, 459 U.S. 1040 (1982).[1] Those cases discuss the requirement that the proof must show the existence of a RICO enterprise separate and apart from the predicate acts which constitute the pattern of racketeering activity. They do not discuss the requirements for pleading the nature or separateness of the enterprise. This court has not yet taken a position on the question whether the enterprise must have an ascertainable structure distinct from that inherent in the pattern of racketeering activity, but it has noted the split of authority on "this troublesome issue." Fleischhauer v. Feltner, 879 F.2d 1290, 1297 n. 4 (6th Cir.1989), cert. denied, 493 U.S. 1074 and 494 U.S. 1027 (1990).
 
 
 8
 The district court apparently adopted positions of the Third, Eighth, and Tenth Circuits as expressed in the cases noted above. It then went further to hold that a complaint must plead the separateness of the enterprise from the predicate acts in the pattern of racketeering activity in order to survive a motion to dismiss for failure to state a claim. The Fifth Circuit has apparently taken this position in Montesano v. Seafirst Commercial Corp., 818 F.2d 423, 427 (5th Cir.1987), in which it stated that "plaintiffs must allege both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.' Moreover, plaintiffs must plead specific facts, not mere conclusory allegations, which establish the enterprise." (Citation omitted). See also Manax v. McNamara, 842 F.2d 808, 811 (5th Cir.1988). At least one district court within this circuit has applied these Fifth Circuit cases to require a plaintiff to plead facts sufficient to demonstrate the distinctness of the enterprise. Firestone v. Galbreath, 747 F.Supp. 1556, 1577 (S.D.Ohio 1990).
 
 
 9
 On the other hand, in Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 790 (3d Cir.1984), cert. denied, 469 U.S. 1211 (1985), the Third Circuit reversed a case in which the district court had dismissed a plaintiff's complaint because it did not sufficiently allege the separateness of the enterprise. The Third Circuit stated:
 
 
 10
 In Riccobene this court stated that in order to establish the existence of an enterprise, the government must demonstrate (1) that the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) that the members of the enterprise function as a continuing unit with established duties; and finally (3) the enterprise must be separate and apart from the pattern of activity in which it engages. 709 F.2d at 221-24. The court below ruled that because Seville failed to plead these three attributes, Count One did not state a cause of action under RICO and must be dismissed.
 
 
 11
 In so ruling, the district court confused what must be pleaded with what must be proved. Riccobene and Turkette certainly stand for the proposition that a plaintiff, to recover, must prove that an alleged enterprise possesses the three described attributes. But neither case speaks to what must be pleaded in order to state a cause of action. The district court erred in applying the Riccobene-Turkette proof analysis to the allegations in Seville's complaint.
 
 
 12
 We need cite no authority for the proposition that the Federal Rules of Civil Procedure were designed to eliminate the vagaries of technical pleading that once plagued complainants, and to replace them with the considerably more liberal requirements of so-called "notice" pleading. Under the modern federal rules, it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action.
 
 
 13
 In the present case, Seville identified the four entities it believed were enterprises that had been marshalled against it. The rules of pleading require nothing more at this early juncture than that are allegation.
 
 
 14
 (Citation omitted).
 
 
 15
 In dismissing plaintiff's complaint, the district court adopted the reasoning of the cases that require proof of a RICO enterprise separate and distinct from the pattern of racketeering. It then required plaintiff, at the pleading stage, to allege this separateness factor. The approach of the Third Circuit in Seville seems more appropriate. The Third Circuit is one of the circuits that requires proof of an enterprise separate and apart from the pattern of racketeering activity. Riccobene, 709 F.2d at 223-24. Its conclusion that this separateness need not be particularly pleaded and that the rules of pleading require only the bare allegation that an enterprise exists is, therefore, of some persuasive force.
 
 
 16
 It is also well to consider that the complaint in this case was drafted by a non-lawyer acting pro se and proceeding in forma pauperis. His pleadings, therefore, are not held to the most vigorous, technical standards.
 
 
 17
 As the Supreme Court held in Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), pro se complaints and other documents, "however inartfully pleaded," are held to "less stringent standards than formal pleadings [and documents] drafted by lawyers," and are to be liberally construed.
 
 
 18
 Perreault v. Hostetler, 884 F.2d 267, 270 (6th Cir.1989).
 
 
 19
 In his complaint, plaintiff alleged that the Emmet County Prosecutor's Office was an enterprise, that the Emmet County Sheriff's Office was an enterprise, that the Petoskey News-Review was an enterprise, and that the offices of Judge Pajtas and Judge Varnum were enterprises.[2] Whether he can prove these allegations is still open to question,[3] but under the reasoning in Seville, the allegations themselves appear to be sufficient. If so to thus, the district court erred in dismissing plaintiff's RICO claims.
 
 C.
 
 20
 Plaintiff argues that the district court erred in holding that plaintiff's civil rights claims under 42 U.S.C. § 1983, 1985, and 1986 were barred by the applicable[4] Michigan statute of limitations, MCL § 600.5805(8). This statute requires that actions for injuries to person or property be brought within three years of the time of the injury. Because the complaint in this case was filed on June 27, 1990, the applicable statute of limitations would bar actions brought for injuries to the plaintiff occurring before June 27, 1987.
 
 
 21
 In McCune v. City of Grand Rapids, 842 F.2d 903, 906 (6th Cir.1988), this court rejected the argument that the continuance of a conspiracy beyond the date when injury or damage occurs extends the statute of limitations in a section 1983 action. It adopted the standards of Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir.1980), cert. denied, 450 U.S. 920 (1981), in which the Second Circuit held that "[t]he existence of a conspiracy does not generally postpone accrual of causes of action arising from the conspirators' separate wrongs." This appears to be the prevailing view. Scherer v. Balkema, 840 F.2d 437, 439-40 (7th Cir.) (collecting cases), cert. denied, 486 U.S. 1043 (1988).
 
 
 22
 In the fifty-page complaint, plaintiff sets forth 170 paragraphs in which he details the actions he alleges defendants took against him. All these actions, with the exception of thirteen newspaper articles written by defendant Robbins between July 15, 1987, and February 19, 1988, occurred before June 27, 1987, the point three years in time before the filing of the complaint. Most of the alleged injuries suffered by plaintiff occurred more than three years prior to the filing of the complaint, and his civil rights actions based on those injuries, therefore, are barred by the statute of limitations, as the district court held.
 
 
 23
 Plaintiff argues that MCL § 600.5851(1) saves his civil rights claims from the operation of the statute of limitations because it provides that a person "imprisoned at the time the claim accrues" has one year after the removal of that disability within which to file his action. In Jones v. City of Hamtramck, 905 F.2d 908, 909 (6th Cir.) (per curiam), cert. denied, 111 S.Ct. 265 (1990), this court addressed this very issue and held that
 
 
 24
 [a] pretrial detainee is not a person who has been "imprisoned" within the literal meaning of that term, and we have no reason to doubt the conclusion of the district judge that the Michigan courts would give the statute a literal interpretation.
 
 
 25
 In Jones, the plaintiff made allegations that, in connection with his arrest, "he was forced to incriminate himself, that he was taken into custody and held on a murder charge without probable cause, that he was not taken before a magistrate, and that he was denied counsel." Id. at 908 (emphasis added). Since the plaintiff in Jones was "taken into custody," it appears that this court in its holding meant to distinguish between cases in which a plaintiff is a mere pretrial detainee and cases in which he is a prisoner under sentence. Thus, we held that the Michigan tolling statute, MCL § 600.5851(1), applied only to a prisoner under sentence. In Jones, we stated that "[a] pretrial detainee is not a person who has been 'imprisoned' within the literal meaning of that term...." Id. at 909. We are bound to follow this holding by another panel of this court. Agristor Leasing v. A.O. Smith Harvestore Products, 869 F.2d 264, 268 (6th Cir.1989).
 
 
 26
 Applying Jones to this case, it is clear that the district court was correct in concluding that MCL § 600.5851(1) did not toll the statute of limitations during plaintiff's pretrial detention, which lasted from his arrest in 1986 until his sentencing on February 17, 1988. Therefore, the acts complained of by the plaintiff occurred while he was not under the legal disability of imprisonment, and the statute of limitations ran on June 27, 1987, against all but a few of the injuries plaintiff alleged in his complaint. Because almost all plaintiff's causes of actions accrued[5] more than three years prior to the filing of the complaint, those causes of actions are barred.
 
 
 27
 As for the thirteen counts in the complaint alleging that defendant Robbins published false and misleading newspaper articles within the limitations period, the district court would be free on remand to consider the defenses raised by defendants Robbins and Petoskey News-Review in their pleadings or in such other motions as may be filed.
 
 D.
 
 28
 Defendant Emmet County Prosecutor's Office is the only defendant to file a cross-appeal in this case. It argues on appeal that the district court erred in holding that a previous action, McNeil v. Emmet County Prosecutor's Office, et al., No. 1:88:CV:625 (WDMich. April 28, 1989), had no res judicata, collateral estoppel, or judicial estoppel effects on the present case. In the former case, plaintiff sued Emmet County Prosecutor's Office, John Salan, Petoskey News-Review, and John Robbins, all of whom are defendants in this case, alleging that the stories in the newspaper and the manner in which they were reported deprived him of his rights to due process. He also alleged that his pretrial detention of 571 days was cruel and unusual punishment under the Eighth Amendment.
 
 
 29
 The district court, following the recommendation of the magistrate, initially held that plaintiff's due process claims should be dismissed because that part of his action constituted a challenge to the validity of his conviction and should therefore be dismissed as a premature petition for the writ of habeas corpus. Because plaintiff's criminal case was still in the Michigan appellate courts, plaintiff could not maintain his habeas corpus action because he had obviously not exhausted state remedies. "Where, as here, a defendant attacks the validity of his conviction, his action for damages must wait until the Michigan courts determine the validity of his conviction." J.A. 522. The district court also agreed with the magistrate that plaintiff's 571-day pretrial detention violated neither the Eighth nor Fourteenth Amendments.
 
 
 30
 Plaintiff appealed and this court affirmed the district court's summary judgment insofar as it dismissed plaintiff's Eighth Amendment pretrial detention claims, but it reversed as to the due process part of the complaint which alleged that plaintiff had been deprived of his constitutional rights to a fair trial and an impartial tribunal by the false and malicious news stories printed about his case. As to that part of the complaint, this court held that plaintiff's civil rights damage action should have been stayed, not dismissed, pending the outcome of plaintiff's state court appeal.
 
 
 31
 After this court's remand, plaintiff's criminal case ran its course through the Michigan courts. Those courts affirmed plaintiff's conviction, and the district court took up again the question of whether plaintiff's due process claim entitled him to damages for the series of newspaper articles published about his case. Without any factual analysis, it readopted the report and recommendation of the magistrate, which had granted summary judgment against plaintiff on the procedural grounds that his claim alleging he had been coerced into pleading guilty by the newspaper articles was in reality a challenge to the validity of his conviction and should therefore be dismissed as a premature petition for habeas corpus relief. It therefore appears that the district court in the former action never reached the merits of plaintiff's due process claim. Certainly there is no discussion or analysis of it. As the district court noted, the former "action was dismissed on procedural and not substantive grounds." J.A. 80. Thus, the former case has no preclusive effect, and the district court did not err in so holding.
 
 E.
 
 32
 Plaintiff argues that the district court erred in dismissing his pendent state law claims pursuant to United Mineworkers of America v. Gibbs, 383 U.S. 715, 726 (1966). It is not necessary for this court to consider this issue if it determines that this case must be remanded for the reinstatement of plaintiff's RICO claims. That action would reestablish federal jurisdiction in the district court, and the plaintiff's state claims would thus become pendent again.
 
 
 33
 In the case below, defendants raised a number of defenses and affirmative defenses, both in their motions to dismiss and for summary judgment, which were not reached by the district court because of its disposition of this case on procedural grounds. The district court would, of course, be free on remand to consider all the defenses raised by defendants.
 
 III.
 
 34
 For the foregoing reasons, the district court's dismissal of plaintiff's RICO claims for pleading imperfections under Federal Rule of Civil Procedure 12(b)(6) is REVERSED, and this case is REMANDED to the district court for further consideration. The district court's ruling that plaintiff's civil rights claims were barred by the applicable statute of limitations is AFFIRMED except as to those thirteen claims alleging false and malicious newspaper articles published after June 27, 1987. As to those remaining thirteen civil rights claims, we REVERSE the district court and REMAND those claims for further consideration. The district court is AFFIRMED as to its ruling that the previous case of McNeil v. Emmet County Prosecutor's Office et al., has no preclusive effect such as would bar plaintiff's claims in this case. Finally, the district court is directed to reinstate plaintiff's state law claims pending its determination of the remaining federal claims. However, by affirming in part and reversing in part, we are not in any way suggesting or implying what the eventual outcome of this case should be.
 
 
 
 [1]
 To the contrary are United States v. Weinstein, 762 F.2d 1522, 1537 n. 13 (11th Cir.), modified, 778 F.2d 673 (1985), cert. denied, 475 U.S. 1110 (1986); United States v. Bargaric, 706 F.2d 42, 55 (2d Cir.), cert. denied, 464 U.S. 840 and 464 U.S. 917 (1983)
 
 
 [2]
 Although it is clear that trial judges have absolute judicial immunity for actions taken in their judicial capacities, the issue of judicial immunity is not before us at this time
 
 
 [3]
 From a review of the district court's docket sheet, it appears that little or no discovery was engaged in. Plaintiff sought it; defendants attempted to block it. See Record Entries Nos. 69, 73, 75, 79, 83, 89
 
 
 [4]
 The parties do not dispute the applicability of this statute
 
 
 [5]
 Under Michigan law, a cause of action accrues when all the elements necessary to prove the wrong have occurred and suit can be maintained. Perreault v. Hostetler, 884 F.2d 267, 270 (6th Cir.1989)